# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:20-cr-395-1 |
| | ) | |
| PLAINTIFF, | ) | CHIEF JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| AMIE DEMMING, | ) | |
| | ) | |
| | ) | |
| DEFENDANT. | ) | |

On March 21, 2023, defendant Amie Demming ("Demming" of "defendant") was sentenced to a custody term of 63 months, followed by 3 years of supervised release. (Doc. No. 296 (Judgment); Minutes of Proceedings [non-document], 3/21/2023.) She was also directed to pay $6,552,903 in restitution. (Doc. No. 296, at 5.) Demming is currently serving her sentence at Carswell FMC—an administrative security federal medical center—and has an anticipated release date of January 15, 2027.[1] Now before the Court is Demming's motion, as supplemented by appointed counsel, for compassionate release. (Doc. No. 395 (Motion); Doc. No. 411 (Supplemental Motion).) Plaintiff United States of America (the "government") opposes the motion. (Doc. No. 419 (Response). For the reasons that follow, Demming's motion for compassionate release is denied.

## I.  BACKGROUND

On July 23, 2020, a thirteen-count indictment issued charging Demming and eight other individuals in a fraudulent scheme to falsify data from clinical trials of investigational

---

[1] *See* https://www.bop.gov/inmateloc//, last visited 4/3/2025.

pharmaceutical drugs. (*See* generally Doc. No. 1 (Indictment).) The fraud was orchestrated through a private company owned and operated by Demming. Deming's co-conspirators included several members of Demming's own family. (*Id*.)

On July 7, 2022, with the benefit of a plea agreement, Demming entered a plea of guilty to conspiracy to commit mail fraud and wire fraud, in violation of 18 U.S.C. § 1349. (Minutes of Proceedings [non-document], 7/7/2022; Doc. No. 166 (Report and Recommendation); Doc. No. 199 (Order Adopting Report and Recommendation); Doc. No. 200 (Plea Agreement).) Prior to sentencing, the Court ordered the preparation of a Presentence Investigation Report ("PSR"). (*See* Doc. No. 224 (PSR).) The PSR detailed Demming's many medical and mental health conditions— including Stage 3 chronic kidney disease, congestive heart failure, heart disease, hypertension, obesity, Type 2 diabetes, osteoarthritis, dyspnea on exertion (short of breath), elevated blood uric acid level, depression, and attention deficit hyperactivity disorder ("ADHD")—and the numerous medications she was prescribed to treat these conditions. (*See id*. at $19^2$–21 ¶¶ 67–73.) Demming's health concerns were also discussed during the sentencing hearing.

In arriving at an appropriate sentence, the Court first determined Demming's base offense level to be 7. (*See also* Doc. No. 224, at 15 ¶ 42.) After the applicable adjustments were applied— including an 18-level enhancement for loss of more than $3,500,000 but less than $9,500,000, a 2-level enhancement for ten or more victims, a 4-level enhancement for being an organizer/leader, and a 3-level reduction for acceptance of responsibility—the resulting total offense level was 28. (*See also id*. at 15–16 ¶¶ 43–52.) Demming had one prior conviction for domestic violence, which

---

[2] All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

yielded two criminal history points. (*See also id*. at 16–17 ¶¶ 55–56.) With a criminal history category II and an offense level of 28, the advisory guideline range was 87 to 108 months. (*See also id*. at 16, 26 ¶¶ 57, 84.) Ultimately, however, the Court departed downward 3 levels to bring her offense level to 25, which resulted in an advisory guideline range of 63 to 78 months. (Doc. No. 297 (Statement of Reasons), at 2, 4.) Defendant's serious medical conditions factored into the Court's decision to impose a sentence at the lowest end of this revised range.[3] The Court also recommended that Demming be placed in a medical facility "so that she may receive proper treatment and care for her serious medical and mental conditions[.]" (Doc. No. 296, at 2.)

On November 7, 2023, Demming filed a motion to reduce her sentence pursuant to 18 U.S.C. § 3582(c)(2) and Amendment 821, Part A, to the United States Sentencing Guidelines, relating to the treatment of "status points." (Doc. No. 346 (Motion).) On February 6, 2024, the Court entered an order denying the motion, finding that Demming was ineligible for relief under Part A of Amendment 821 because she did not receive any "status points" at sentencing. (Doc. No. 354 (Order), at 2–3.) Because Demming did not qualify for relief under Amendment 821, the Court was not required to consider whether the statutory sentencing factors set forth at 18 U.S.C. § 3553(a) favored a reduction in sentence. (*See id*. at 3.) Nevertheless, the Court observed:

> Had the Court proceeded to the second stage of the analysis and considered the sentencing factors in 18 U.S.C. § 3553(a), it is unlikely that Demming would have qualified for a further sentence reduction. Notwithstanding her prison programming and her family support, Demming participated in a complex fraudulent scheme designed to generate false data from non-existent trials of medications. In her leadership role in the conspiracy, Demming and others created false clients for the

---

[3] In her motion, Demming claims that "the national average sentence imposed for fraud is 22 mean months, and 12 median months, respectively. (Doc. No. 395-1, at 3.) But the table that she used does not account for her offense level. As set forth in the PSR, the average length of imprisonment imposed for offenders whose primary guideline was § 2B1.1, with a final offense level of 28 and a criminal history category II, was 77 months and the median length was 77 months. (Doc. No. 224 ¶ 112.) At sentencing, the Court noted that, with the departure, at an offense level of 25 those numbers would be 55 and 60, respectively.

3

> studies, registered clients for the studies without their consent, created false laboratory results, and paid her and her co-conspirators for the false clients' participations in the studies. She already received substantial consideration at sentencing and has only served a tiny fraction of her already below-guideline sentence. A further reduction would undermine the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, and protect the public from further crimes of Demming. *See* § 3553(a).

(*Id*. at 3 n.1.)

On December 13, 2024, Demming filed the present motion for compassionate release. In it, she relies on her numerous medical conditions, including heart disease and Stage 3 kidney disease. (Doc. No. 395-1 (Memorandum in Support), at 6–15.) She complains that the BOP will not permit her to have a blood pressure cuff, and she insists that the generic medications she has been prescribed since her incarceration are not sufficiently controlling her blood pressure. (*Id*. at 14.) In support of early release, Demming also relies on her "family circumstances" relating to her mother's healthcare needs, her own rehabilitation efforts, and general staffing shortages in federal prisons across the country. (*Id*. at 15–18.) It is Demming's position that her medical conditions, in combination with her other concerns, create extraordinary and compelling reasons to justify a reduction in her sentence. (*Id*. at 1.)

## II. LAW AND DISCUSSION

The sentencing court has no inherent authority to reconsider and/or modify an otherwise valid sentence. *United States v. Washington*, 584 F.3d 693, 700 (6th Cir. 2009). Instead, the authority of the Court to resentence a defendant is limited by statute. *United States v. Houston*, 529 F.3d 743, 748–49 (6th Cir. 2008) (citing *United States v. Ross*, 245 F.3d 577, 585 (6th Cir. 2001)); *see United States v. Alexander*, 951 F.3d 706, 707 (6th Cir. 2019) ("Generally speaking, once a court has imposed a sentence, it does not have the authority to change or modify that

4

sentence unless such authority is expressly granted by statute.") Under 18 U.S.C. § 3582(c), a court may only modify a term of imprisonment under the following circumstances: (1) upon a motion of the Director of the BOP or defendant for compassionate release; (2) as expressly permitted by statute or by Fed. R. Crim. P. 35; or (3) where a defendant has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission. § 3582(c)(1)–(2).

Demming does not seek relief under Rule 35, nor does she claim that she was sentenced to a term of imprisonment based on a sentencing range that was subsequently lowered. Instead, she claims that she is entitled to a compassionate release. Under § 3582(c)(1)(A), a district court may grant a sentence reduction "only if it finds that the defendant satisfies three requirements: (1) 'extraordinary and compelling reasons warrant such a reduction'; (2) the 'reduction is consistent with applicable policy statements issued by the Sentencing Commission'; and (3) the relevant § 3553(a) factors support the reduction." *United States v. Hunter*, 12 F.4th 555, 561 (6th Cir. 2021) (quoting § 3582(c)(1)(A)(i); *United States v Elias*, 984 F.3d 516, 518 (6th Cir. 2021)); *see United States v. Jones*, 980 F.3d 1098, 1101 (6th Cir. 2020). Additionally, exhaustion of administrative remedies is a mandatory claims-processing rule that must be satisfied before a defendant may seek compassionate release. *United States v. Alam*, 960 F.3d 831, 833–34 (6th Cir. 2020) (citations omitted).

The policy statement applicable to compassionate release motions, U.S.S.G. § 1B1.13, was recently amended (effective November 1, 2023) and describes six categories of extraordinary and compelling reasons that individually, or in combination, may support a request for compassionate release. These categories are: (1) medical circumstances of the defendant; (2) the age of the

defendant; (3) a defendant's family circumstances; (4) sexual or physical abuse suffered by the defendant while in custody involving a "sexual act" or "serious bodily injury"; (5) "other reasons" similar in gravity as those articulated in (1)–(4); and (6) an "unusually long sentence." § 1B1.13(b).

The parties agree that Demming has exhausted her administrative remedies. (Doc. No. 419, at 2; Doc. No. 395-1, at 3; *see* Doc. No. 395-3 (Administrative Request).) The Court, therefore, turns to a consideration of whether defendant has demonstrated the existence of extraordinary and compelling reasons identified in § 3582(c)(1)(A)(i), and discussed in detail in U.S.S.G. § 1B1.13(b), as amended.

### A. **Medical Circumstances of the Defendant (U.S.S.G. § 1B1.13(b)(1))**

Citing to the first category under the policy statement—medical circumstances of the defendant—Demming identifies the following medical conditions as constituting extraordinary and compelling reasons for release: hypertension, congestive heart failure, chronic kidney disease (Stage 3), obesity, heart disease, edema, osteoarthritis, hematuria, and asthma. (Doc. No. 395-1, at 7–14.) As an initial matter, the Court observes that these conditions—though serious—cannot establish an extraordinary and compelling reason for compassionate release because they were known by the Court at the time of sentencing. "Section 3582(c)(1)(A) precludes a court from simply taking facts that existed at sentencing and repackaging them as 'extraordinary and compelling.'" *Hunter*, 12 F.4th at 569–70 ("facts that existed at sentencing cannot later be construed as 'extraordinary and compelling reasons' to reduce a final sentence"); *United States v. Lemons*, 15 F.4th 747, 750 (6th Cir. 2021) (similar). All of these medical conditions were presented to the Court at the time of sentencing, and they factored into the Court's decision to impose a low-end guideline sentence.

6

Moreover, the Sixth Circuit has made clear that, in order to receive compassionate release, the defendant must show that their "personal circumstances" have "changed so that the district court should weigh the § 3553(a) factors differently than it had at the original sentencing." *Hunter*, 12 F.4th at 569–70 ("A court must first find that the facts of the defendant's personal circumstances changed after sentencing in a way that is 'extraordinary and compelling,' before a court is permitted to weigh (or revisit) the § 3443(a) factors" (quoting *United States v. Navarro*, 986 F.3d 668, 672 (6th Cir. 2021))). While Demming complains about the manner in which the BOP is managing her conditions, she has not alleged that her conditions have worsened.[4]

It is true, as Demming notes, that subsection 1B1.13(e) now endorses the view that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment." U.S.S.G. § 1B1.13(e). The revised guideline, however, is at odds with Sixth Circuit precedent in *Hunter* and similar decisions. *See United States v. Brown*, No. 1:16-cr-118, 2024 WL 1848011, at *4 (W.D. Mich. Apr. 29, 2024) (finding § 1B1.13(e) is in conflict with *Hunter* and holding that "*Hunter* must control . . . unless or until the Court of Appeals revisits its decision"); *United States v. Lee*, 1:18-cr-20198, 2024 WL 1508826, at *6 (E.D. Mich. Apr. 5, 2024) (similar). As the government correctly notes, at least one panel of the Sixth Circuit has favorably cited *Hunter's* holding even after the revision to the guidelines. *See, e.g., United States v. Smith*, No. 23-5519, 2024 WL 1007115, at *5 (6th Cir. Mar. 8, 2024) (citing *Hunter*).

But even if § 1B1.13(e) offered an avenue around Sixth Circuit precedent, it would afford

---

[4] For example, recent BOP records reveal that Demming's kidney disease has not progressed during her incarceration, as Demming remains at Stage 3. (*See* Doc. No. 411-2, at 725 (noting that defendant's chronic kidney disease is at Stage 3 and kidney function "is currently at baseline").).

Demming no relief. It is not the case that Demming's serious health conditions were simply foreseeable or anticipated at the time of sentencing. They were both known and (importantly) *considered* at sentencing. *See Brown*, 2024 WL 1848011, at *4 (noting that defendant was impermissibly "asking the Court to receive arguments that *were* in fact considered by the sentencing judge and come out with a different sentence" (emphasis in original)). Demming's sentence already reflects substantial consideration for her bevy of medical conditions, and she has failed to demonstrate that she is entitled to additional consideration for the same conditions at this time.

But even if the Court did consider these medical conditions anew, it would find that her medical conditions (separately or in combination) do not establish the existence of extraordinary and compelling reasons for release. Under § 1B1.13(b)(1)(A), a defendant's own medical condition (or conditions) may satisfy the extraordinary and compelling threshold if the defendant has a "terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory)."[5] A defendant may also make a sufficient showing if she demonstrates she suffers from a "serious physical or medical condition," a "serious functional or cognitive impairment," or is experiencing "deteriorating physical or mental health" because of age that "substantially diminishes the ability of the defendant to provide self-care" in her facility and "from which . . . she is not expected to recover." § 1B1.13(b)(1)(B). Finally, a defendant may qualify for relief if she is "suffering from a medical condition that requires long-term care or specialized medical care that is not being

---

[5] Under § 1B1.13(b)(1)(A), a "terminal illness" does not require a "specific prognosis of life expectancy (i.e., a probability of death within a specific time period)[.]" The policy statement provides the following examples of a "terminal illness": "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." (*Id*.)

8

provided and without which the defendant is at risk of serious deterioration in health or death." § 1B1.13(b)(1)(C).

Demming does not demonstrate that she suffers from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory)[.]" § 1B1.13(b)(1)(A).[6] And while Demming certainly suffers from several "serious physical or medical condition(s)," she has failed to demonstrate that she is unable to provide self-care in her facility or that the long-term "specialized care" that she requires for her serious conditions "is not being provided" in her facility. § 1B1.13(b)(1)(B) & (C). *See, e.g., United States v. Dusenbery*, No. 5:91-cr-291, 2019 WL 6111418, at *3 (N.D. Ohio Nov. 18, 2019) (finding the defendant did not have the type of "exceptionally severe" condition that justifies release; his kidney ailment, as well as other medical conditions, does not impair his ability to provide self-care in his facility).

The Court has reviewed over 5,000 pages of medical records supplied by Demming and her counsel. (*See* Doc. Nos. 395-4 through 395-7; Doc. Nos. 411-1 through 411-5.) These records demonstrate that Demming is receiving appropriate medical care for her multiple health conditions, both at her medical facility and (when necessary) at outside healthcare facilities, and that she is under continuous medical monitoring and management. (*See generally id*.) She is seen on a regular basis by her primary care physician, as well as specialists in a variety of areas including cardiology, nephrology, and urology. (*See, e.g*., Doc. No. 411-2, at 725, 734, 741, 767, 789, 792.) Additionally, she has regular laboratory testing, imaging (when indicated), and mental health

---

[6] According to the Cleveland Clinic, kidney failure is associated with Stage 5 chronic kidney disease (or end-stage kidney disease) and would qualify as a terminal illness. By contrast, Stage 3 kidney disease, which is consistent with Demming's diagnosis and is the most common stage, is associated with diminished organ functioning and signifies "mild to moderate damage." While the Court does not wish to minimize Demming's condition or her suffering, this type of kidney disease does not qualify as a terminal illness under the policy statement. *See* https://my.clevelandclinic.org/health/diseases/15096-chronic-kidney-disease, last visited 4/4/2025.

counseling. (*See, e.g*., at 411-2, at 637 (blood work, including eGFR and uACR draws),[7] 861 (CT Scan), 864 (Check X-Ray).) She also receives daily (and sometimes multiple times per day) blood pressure checks (*see, e.g., id*. at 521–43), and is prescribed dozens of medications, many of which she takes on a daily basis (*see, e.g., id*. at 612–32).

While Demming complains that the generic form of several of her heart medications are not entirely effective at controlling her blood pressure, medical records from before she was incarcerated demonstrate that her blood pressure was difficult to control, even when she had access to brand medications. (*See, e.g*., Doc. No. 411-2 (Cleveland Clinic Medical Records from 2019), at 871, 878.) It is clear from the BOP medical records that medical professionals are well aware of the challenges associated with treating and managing Demming's high blood pressure and are devoting considerable effort to doing so.

Further, it is telling that in the thousands of pages of medical records that have been produced in support of the present motion, Demming is only able to identify one instance where she believes she was subjected to substandard medical care at her facility. According to Demming, a drug dispensation log demonstrates "inconsistencies in administering semaglutide [(a medicine prescribed for the management of her kidney conditions)] weekly according to the schedule ordered by Ms. Demming's doctor." (Doc. No. 411, at 4 (citing Doc. No. 411-2, at 555).) Specifically, she highlights that in January 2024 she missed two doses of semaglutide. (*Id*.) As the government correctly notes, however, these same BOP records reveal that Demming was admitted

---

[7] eGFR and uACR are identified by the National Kidney Foundation as important for monitoring kidney function and kidney health. The fact that the BOP is closely monitoring Demming's condition by regularly performing these important blood tests (*see id*. at 667, 670, 677, 680, 691, 697) is further evidence her kidney disease is being properly managed at her facility. *See* https://www.kidney.org/kidney-topics/know-your-kidney-numbers-two-simple-tests, last visited 4/4/2025.

to an outside hospital for the respiratory virus RSV within days of receiving her first dose. (*See id*. at 456–63.[8]) Demming has failed to show that the delay in administering her medication was unrelated to her contraction of RSV or was otherwise medically inappropriate under those circumstances.

As indicated previously, Demming's BOP medical records do not demonstrate that she suffers from a medical condition (or a combination of conditions) that rise to the level of extraordinary and compelling. Further, Demming has not demonstrated that she is at risk of suffering a serious deterioration in her health. Rather, the proffered medical records establish that Demming is receiving appropriate medical care by healthcare professions at her medical facility, and that her conditions are being properly monitored, treated, and (to the extent possible) controlled.

B. **Family Circumstances (U.S.S.G. § 1B1.13(b)(3))**

Demming's second identified reason—family circumstances of defendant—also fails to meet the threshold requirement for compassionate release. Section 1B1.13(b)(3)(C) provides that the "incapacitation" of the defendant's parent may qualify as an extraordinary and compelling reason for early release where "the defendant would be the only available caregiver for the parent." Demming represents that her mother, Debra Adamson, has suffered from Lewy body dementia since 2020. (Doc. No. 395-1, at 15.) She notes that her mother is presently "confined to a nursing home due to the fact she has no one to take care of her as defendant was her primary caregiver for the two and a half years prior to her confinement." (*Id*.) Of course, the Court was aware at the time

---

[8] Again, it is clear that the BOP is responsive to Demming's medical concerns, and (when necessary) provides her with access to outside medical professionals.

11

of sentencing that Demming's mother, who was a co-defendant in this case, unfortunately suffers from this form of dementia. (*See* Doc. No. 246 (Presentence Investigation Report for Debra Adamson), at 15–16 ¶¶ 57–58.) In fact, the Court agreed to delay Demming's sentencing date so that Demming could arrange for her mother's care. (Order [non-document], 10/14/2022; *see* Doc. No. 226 (Motion to Continue).)

Moreover, this situation does not meet the policy statement's definition of "extraordinary and compelling reasons" for compassionate release. As her motion makes clear, Demming's mother currently resides in a nursing home, and Demming has not alleged—let alone established—that her mother is not receiving appropriate medical and physical care at her nursing home. Her motion, therefore, demonstrates that she is not "the only available caregiver" for her mother. *See, e.g., United States v. Kitchen*, No. 4:22-cr-15, 2024 WL 4870766, at *2 (E.D. Tenn. Nov. 22, 2024) (noting that defendant "indicates that her grandmother is in fact receiving care, albeit in a nursing home"); *United States v. Peake*, No. 5:15-cr-52, 2024 WL 1403072, at *2 (E.D. Ky. Apr. 1, 2024) (rejecting compassionate release under § 1B1.13(b)(3) where defendant "concedes that his mother has been admitted to a nursing home"); *United States v. Huffman*, No. 2:19-cr-163, 2024 WL 3046412, at *4 (S.D. W. Va. June 18, 2024) (denying compassionate release where defendant admits his parents have the option to enter a nursing home).

C. **Rehabilitation and Staffing Shortages**

Demming also relies on her low recidivism rate and her efforts at rehabilitation. She is "very remorseful about her past conduct and actions, and she is truly and deeply sorry about her shameful conduct[.]" (Doc. No. 395-1, at 17.) In support, she notes that she received a pattern score of 9, using the BOP's risk assessment tool, which is classified as "low" risk. (*Id*. at 18.) She

also appends to her motion certificates and other BOP records demonstrating the programming she has completed while incarcerated. (Doc. No. 395-2 (BOP Programming Records).)

A low recidivism rate is not identified by the governing policy statement as an extraordinary and compelling reason for release. Moreover, while Demming's rehabilitative effort are commendable, the policy statement makes clear that alone they do not amount to an extraordinary and compelling reason for release. U.S.S.G. § 1B1.13(d) (stating that "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason"); *see United States v. Ruffin*, 978 F.3d 1000, 1004, 1009 (6th Cir. 2020) (stating that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" for compassionate release (quoting 28 U.S.C. § 994(t))); *see also United States v. Jethrow*, No. 4:08-cr-520, 2025 WL 461800, at *5 (N.D. Ohio Feb. 11, 2025) ("In addition, though rehabilitation is to be encouraged and applauded, it is also part of what is expected from all inmates.")

Demming also claims that she is subjected to particularly harsh prison conditions. She argues generally that "[f]ederal prisons have become unsafe due to severe staff shortages which is a management problem that the BOP is not solving." (Doc. No. 395-1, at 16.) She does not allege, however, that Carswell FMC is experiencing staffing shortages, or otherwise establish that her facility is unable to adequately and timely mitigate the risks associated with such shortages. And even if Carswell FMC was impacted by personnel issues, the condition of a particular facility is not one of the enumerated basis for compassionate relief under U.S.S.G. § 1B1.13, and Demming has not otherwise demonstrated that it would rise to the level of extraordinary or compelling.

13

### D. Catchall Provision (U.S.S.G. § 1B1.13(b)(5))

Finally, Demming relies on the catchall provision in the policy statement to support release. Under § 1B1.13(b)(5), a prisoner can establish the existence of extraordinary and compelling reasons for release when she "presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)." As set forth above, Demming does not identify any circumstances that are similar in gravity to those described in the first four paragraphs of the policy statement. Instead, she invites the Court to collectively consider all of her previously identified reasons under this "catchall" provision. Unfortunately, because none of the non-qualifying reasons Demming offers "are similar in gravity" to the reasons articulated in § 1B1.13(b)(1)–(4), even when they are considered collectively, the Court cannot find that they create extraordinary and compelling reasons under § 1B1.13(b)(5). And while rehabilitation "may be considered in combination with other circumstances in determining whether and to what extent a reduction . . . is warranted" (*see* § 1B1.13(d)), Demming's rehabilitation efforts in combination with the other stated reasons do not rise to the level of extraordinary and compelling.

### E. Sentencing Factors (18 U.S.C. § 3553(a))

Even if Demming had cleared this initial hurdle, the Court would still deny her motion because the sentencing factors in § 3553(a) do not favor a sentence reduction. Demming bears the burden of "making 'a compelling case as to why the . . . § 3553(a) analysis would be different' now than it was during her original sentencing hearing." *United States v. Cook*, No. 3:16-cr-284, 2022 WL 118185, at *3 (N.D. Ohio Jan. 12, 2022) (quoting *United States v. Sherwood*, 986 F.3d

14

951, 954 (6th Cir. 2021)). Yet, beyond the passage of time, little has changed since the Court considered these factors at sentencing and (again) in ruling on Demming's motion to reduce sentence. The nature and circumstances of her offense remain serious. Demming orchestrated a clinic trial fraud conspiracy that spanned several years and resulted in over six million dollars in loss to study sponsors. As the president of a company (identified in the Indictment as Company 1), Demming and others at her direction falsified laboratory results, utilized fictious clients, and enrolled other clients without their knowledge, for the purpose of enriching herself and her co-conspirators at the expense of the study sponsors and the healthcare system. Her crime was serious and continues to warrant a significant sentence.

The Court has considered Demming's programming, her good conduct in prison, her letters of support from her family, her stated release plan, and her health concerns. But after considering all of the § 3353(a) factors, the Court finds that a reduction in sentence would undermine the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, and protect the public from further crimes of the defendant.

### III. CONCLUSION

For the foregoing reasons, the Court denies defendant's motion, as supplemented, for a compassionate release.

**IT IS SO ORDERED**.

Dated: April 15, 2025

**HONORABLE SARA LIOI
CHIEF JUDGE
UNITED STATES DISTRICT COURT**